SK:MRG
F. #2019R00410

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| IN THE MATTER OF AN APPLICATION FOR A SEARCH WARRANT FOR: | AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT |
| THE PERSON KNOWN AND DESCRIBED AS OCTAVIO MALDONADO | (Fed. R. Crim. P. 41) 20 M 135 No. ~~19-CR-490~~ |

- - - - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

DEBRA LAWSON, being duly sworn, deposes and states that she is a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives, duly appointed according to law and acting as such.

Upon information and belief, there is probable cause to believe that in the saliva of OCTAVIO MALDONADO there are samples of deoxyribonucleic acid ("DNA") that constitute evidence of violations of Title 18, United States Code, Section 922(g)(1) and will be obtained by the taking, and preserving as evidence, of a buccal swab sample of OCTAVIO MALDONADO.[1]

---

[1] Certain courts that have addressed the issue have found that obtaining DNA via saliva is subject to the protections of the Fourth Amendment. See United States v. Nicolosi, 885 F. Supp. 50, 51-56 (E.D.N.Y. 1995) (Glasser, J.); In re Shabazz, 200 F. Supp. 2d 578, 581-85 (D.S.C. 2002). But see United States v. Owens, 2006 WL 3725547, at *6-17 (W.D.N.Y. Dec. 15, 2006) (finding probable cause not necessary for a saliva sample for DNA from an inmate); In re Vickers, 38 F. Supp. 2d 159, 165-68. (D.N.H. 1998) (permitting saliva sample by grand jury subpoena).

The source for your deponent's information and the grounds for his belief are as follows:[2]

1. I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). The facts set forth in this affidavit are based upon my own investigation of the facts and upon what I have learned from other individuals who have participated in the investigation. Additionally, statements attributable to individuals herein are set forth in sum and substance and in part.

2. I have been involved in an investigation of OCTAVIO MALDONADO relating to an assault with a firearm that occurred on February 10, 2019 inside an apartment at 30 Avenue V in Brooklyn, New York ("the Apartment").

3. Based on discussions with an individual whose identity is known to the government ("Victim-1"), in the early morning hours of February 10, 2019, the defendant DIANA CARO had a birthday party for herself at the Apartment. Among the guests at her party was her boyfriend, OCTAVIO MALDONADO.

4. Following a verbal altercation at the party, MALDONADO approached a Victim-1 from behind and pistol-whipped him across the side of his face. The impact broke Victim-1's jaw and caused the gun to fire, lodging a bullet in the apartment wall. Victim-1 was taken to Kings County Hospital and a witness whose identity is known to the government ("Individual-1") called the New York City Police Department ("NYPD").

---

[2] Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause to search, I have not set forth all of the facts and circumstances relevant to this investigation.

5. Later that morning, at approximately 6:00 a.m. on Sunday, February 10, 2019, NYPD officers responded to reports of a dispute with a firearm inside the Apartment.

6. No one was present at the Apartment when NYPD officers initially arrived.

7. NYPD officers searched the hallway outside the Apartment and discovered a Taurus model 709 Slim 9mm-caliber handgun loaded with six Winchester 9mm-caliber cartridges (the "Firearm") concealed beneath a garbage bag.

8. At approximately 6:15 a.m., DIANA CARO arrived and stated that she lived at the Apartment. When asked by the officers whether she had called the police or otherwise knew about a dispute with a firearm, CARO stated, in sum and substance and in part, that she had been away "all weekend" celebrating her birthday and did not know why the police would have been called to her apartment ("CARO's Initial Statements"). CARO's Initial Statements were captured on the officers' body-worn cameras.

9. NYPD officers learned that CARO's Initial Statements were false when multiple witnesses stated that they had observed CARO in the Apartment in the early morning hours of February 10, 2019. CARO subsequently admitted to NYPD officers that she was in fact present at the Apartment on February 10, 2019.

10. Meanwhile, at approximately 6:30 a.m., Victim-1 was admitted to Kings County Hospital with a broken jaw and other facial injuries. Victim-1 was interviewed by NYPD officers at the hospital and stated, in sum and substance and in part, that hours earlier he had been assaulted with a firearm during a party at the Apartment. Specifically, Victim-1 told the officers that, during the party, OCTAVIO MALDONADO

3

pistol-whipped him and that the impact had caused the firearm to discharge inside the apartment.

11. The NYPD officers at Kings County Hospital conveyed this information to the NYPD officers at the Apartment and on site at 30 Avenue V in Brooklyn, New York, whereupon those NYPD officers declared the Apartment, hallway and surround common area a crime scene and conducted a search that revealed an expended shell casing and a bullet hole in the kitchen wall of the Apartment.

12. During a conversation with law enforcement, CARO emptied the contents of a coffee cup in the kitchen and revealed an expended projectile.

13. On October 24, 2019, a grand jury in this District returned an indictment charging MALDONADO with being a felon in possession of a firearm on the date of the aforementioned assault, in violation of Title 18, United States Code, Section 922(g)(1). See Criminal Docket No. 19-490 (WFK). On that same date, United States Magistrate Judge Sanket J. Bulsara found probable cause to conclude that CARO had obstructed justice, in violation of Title 18, United States Code, Section 1512(c), and issued a warrant for her arrest. See 19-MJ-981 (SJB).

14. Swabs taken of the trigger and trigger guard of the Firearm ("Swab-1") and the slide grip grooves and releases of the Firearm ("Swab-2") were sent to the New York Office of the Chief Medical Examiner ("OCME") for testing. I have been informed that OCME found DNA from three contributors on Swab-1 and Swab-2, one of which matches the DNA profile for DIANA CARO. OCME was not able to determine the DNA profiles of the additional contributors, but has informed me that the results are suitable for comparison to other DNA profiles. OCME has advised that to confirm

4

whether MALDONADO's DNA is a match to the DNA found on Swab-1 and/or Swab-2, it will require a DNA sample directly from MALDONADO, which can be obtained through buccal swabbing.

15. In addition, a swab taken of the frontstrap, backstrap and side grips of the Firearm ("Swab-3") were sent to OCME for testing. I have been informed that OCME found DNA from two contributors on Swab-3, one of which matches the DNA profile for DIANA CARO. OCME was not able to determine the DNA profile of the additional contributor, but has informed me that the results are suitable for comparison to other DNA profiles. OCME has advised that to confirm whether MALDONADO's DNA is a match to the DNA found on Swab-3, it will require a DNA sample directly from MALDONADO, which can be obtained through buccal swabbing.

16. The government wishes to compare the DNA from Swab-1, Swab-2 and Swab-3 with a new DNA sample obtained directly from OCTAVIO MALDONADO.

17. Based on the above information, there is probable cause to believe that MALDONADO is the source of the DNA evidence found on the Firearm. Therefore, there is probable cause to believe that a buccal swab from MALDONADO would constitute evidence of his commission of the charged crime.

WHEREFORE, your deponent requests that a search warrant be issued authorizing ATF Special Agents, NYPD officers, United States Marshals and other appropriate law enforcement and support personnel to seize and obtain from OCTAVIO MALDONADO a DNA sample. The DNA samples sought will be collected by buccal swabbing. This method involves taking a sterile swab (similar to a Q-Tip) and gently scrubbing the inside right cheek, then the inside left cheek, for approximately five to ten

seconds. Two samples are requested from MALDONADO in the event that one of the samples becomes contaminated or otherwise cannot be tested. The samples seized will be subsequently submitted to a forensic laboratory for examination and will be subject to examination, testing and analysis. The government has notified Mr. Michael D. Weil, esq., counsel for Mr. Maldonado, of the anticipated time and place of the search of Mr. Maldonado. Mr. Weil stated that he plans to be present during the search of Mr. Maldonado.

_____
DEBRA LAWSON
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me this
_____ day of February 7, 2020

_____    s/ Mann
THE HONORAI
UNITED STATI
EASTERN DIST

6